# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JERNBERG INDUSTRIES, INC., | ) | Case No. 05-25909 |
| JERNBERG SALES, INC., and IRON | ) | (Jointly Administered) |
| MOUNTAIN INDUSTRIES, LLC, | ) | |
| | ) | Bankruptcy Judge John H. Squires |
| Debtors. | ) | |

**MOTION BY THE DEBTORS FOR INTERIM AND FINAL ORDERS (A) DEEMING UTILITY COMPANIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, (B) ESTABLISHING PROCEDURES FOR REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE, AND (C) RESTRAINING UTILITY COMPANIES FROM DISCONTINUING, ALTERING, OR REFUSING  SERVICE PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion") this Court for entry of an interim order substantially in the form of the proposed order attached hereto, pursuant to sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") (i) eliminating the requirement of providing adequate assurance of payment, in the form of additional security deposits, to the utility companies whose names and addresses are set forth in the schedule attached hereto as Exhibit 1 (each a "Utility Company," and collectively, the "Utility Companies"), (ii) deeming the Utility Companies adequately assured, and (iii) establishing procedures for requests for additional assurances and restraining Utility Companies for discontinuing, altering or refusing to provide post-petition utility services (collectively, the "Utility Services") to the Debtors.  The facts and circumstances supporting this Motion are set forth in the Declaration of A. Jeffrey Zappone, Chief Restructuring Officer of the Debtors, in support of first-day motions filed concurrently herewith (the "Zappone Declaration").  The

Debtors also request the Court to set the Motion for a final hearing. In support of this Motion, the Debtors respectively represent as follows:

## INTRODUCTION

1.      On June 29, 2005 (the "<u>Petition Date</u>"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No creditors' committee has yet been appointed in these cases by the United States Trustee. The Debtors are continuing in possession of their respective properties and are operating their respective businesses, as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code.

## BACKGROUND

4.      The Debtors collectively are one of the nation's largest independent suppliers of high volume forged and machined components for the transportation industry. Their products include transmission, suspension, drivetrain, engine and other parts. The Debtors supply parts to leading original equipment manufacturers ("<u>OEMs</u>") such as General Motors Corporation, Harley-Davidson, Inc., Ford Motor Company and Toyota Motor Corporation, and Tier I and II suppliers such as Visteon Corporation, Dana Corporation/US Manufacturing, J.L. French Automotive, Robert Bosch GmbH, NSK, Ltd., Timken Company and TRW Automotive, Inc.[1]

---

[1] A more extensive discussion of the Debtors and their corporate and capital structure is set forth in the Zappone Declaration.

CHICAGO_1272839

5.     The Debtors supply parts for many of the best selling vehicles in North America, including passenger cars, minivans, light duty trucks, sport utility vehicles and motorcycles, and have strong and long-standing relationships with the OEMs and Tier I and II suppliers. Many of the Debtors' customers have made the Debtors their sole-source providers of products and have granted them long-term supply contracts. The quality of the Debtors' products has been consistently recognized by its customers.

6.     The Debtors operate four production facilities in the Chicago area: two forging sites and two machining operations. The Debtors lease three of these facilities from J.I.I. Real Estate, Inc. ("J.I.I. Real Estate"), a non-debtor affiliate of the Debtors; one facility is leased from a third party. The Debtors employ approximately 825 employees, including 177 salaried executives, managers and supervisors, and 577 hourly employees and 71 temporary employees. Approximately 475 of the hourly employees are members of the United Steel Workers of America, Local 2154 represented under three separate collective bargaining agreements.

7.     Jernberg Industries, Inc. ("Jernberg" or "Industries") is owned by M. Eldon Wheeler (39.84%), R. Thomas Beecham (19.77%), J. William Giffune, Jr. (19.77%), Thomas McDonald (11.49%) and Michael Mills (9.13%). Jernberg Sales, Inc. ("Jernberg Sales" or "Sales") is owned by Messrs. Wheeler (43.5%), Beecham (18.5%), Giffune (18.5%), McDonald (10.8%) and Mills (8.7%). And, Iron Mountain Industries, LLC ("Iron Mountain") is owed by Messrs. Beecham (25%), Giffune (25%), McDonald (25%) and Mills (25%). Messrs. Beecham, Giffune, McDonald and Mills constitute the Debtors' senior management team.

8.     The Debtors' prepetition indebtedness consists of borrowings under two separate loan facilities. First, LaSalle Bank, N.A. ("LaSalle"), as lender (the "JIS Lender") has provided a loan facility to Jernberg and Jernberg Sales (the "JIS Facility") consisting of a revolving credit facility and three term loans. As of June 28, 2005, the JIS Facility had an outstanding principal

-3-

balance of approximately $21,682,202.07, together with accrued and unpaid interest, fees and expenses owing to the JIS Lender.  The obligations under the JIS Facility are secured by a lien or security interest in all or substantially all of the assets of Jernberg and Jernberg Sales.  Second, LaSalle, as lender (the "IM Lender") has provided a loan facility to Iron Mountain (the "IM Facility" and, together with the JIS Facility, the "LaSalle Facilities") consisting of a revolving credit facility and a term loan.  As of June 28, 2005, the IM Facility had an outstanding principal balance of approximately $12,300,000.00, together with accrued and unpaid interest, fees and expenses owing to the IM Lender.  The obligations under the IM Facility are secured by a lien or security interest in all or substantially all of the assets of Iron Mountain.  Both of the LaSalle Facilities are partially guaranteed by the Debtors' senior management.

9.     In connection with their chapter 11 filings, the Debtors have filed a motion seeking authority to obtain postpetition debtor-in-possession financing from LaSalle, as lender (the "DIP Lender") in accordance with a proposed Credit Agreement (the "DIP Loan Agreement").  The salient economic terms of the DIP Loan Agreement are as follows:  (i) the Debtors may borrow up to $7 million from the DIP Lender; (ii) the Debtors' outstanding obligations under the DIP Loan Agreement bear interest at a rate equal to the greater of (A) the Federal Funds Rate plus 0.5%, and (B) the DIP Lender's prime rate for commercial customers plus, in either event, 2% (in the even of a default under the DIP Loan Agreement, an additional 2% is added); and (iii) the Debtors' obligations under the DIP Loan Agreement become due and payable on the earlier of (A) 180 days after the entry of the Interim Order, and (B) any other Termination Date (as defined in the DIP Loan Agreement to include a consummation by the Debtors of a sale of substantially all of their assets) thereunder.

10.     The Debtors have filed a motion seeking approval of bidding procedures in connection with the proposed sale of substantially all of their assets to Hephaestus Holdings, Inc.

CHICAGO_1272839

("HHI"), an acquisition entity set up by and affiliated with KPS Special Situations Fund II, L.P. ("KPS") for $1,250,000 cash and the assumption of certain of the Debtors' liabilities (the "Offer"). The Debtors believe that the aggregate value of the Offer exceeds $60,000,000.

11.    The Debtors commenced their chapter 11 cases as a result of challenging conditions in the automotive industry, including a series of developments which have resulted in a significant reduction of the Debtors' liquidity position. The market share and overall production of the Debtors' North American OEM customers has declined in recent years. Also, the Debtors have experienced substantial increases in the cost of steel, which is the primary input in their production processes. Further, the OEMs continue to exert pressure on their suppliers, including the Debtors, to reduce prices. Finally, certain of the Debtors' customers gave notice that they were terminating their accelerated payment programs for all of their suppliers, including the Debtors, which has had a materially adverse impact on the Debtors' liquidity position.

12.    These conditions have caused a steady deterioration of the Debtors' liquidity position and have forced the Debtors to seek chapter 11 protection.

13.    Prior to filing for chapter 11 protection, the Debtors entered into an agreement with CM&D Management Services, LLC (including affiliates, "CMS") to retain A. Jeffery Zappone as the Debtors' Chief Restructuring Officer ("CRO"), and to retain Joseph M. Geraghty as Cash and Restructuring Manager and Joshua J. Siano, Gerald B. Saltarelli and J. David Mathews as Cash and Restructuring Support personnel. On and after the Petition Date, the Debtors intend to continue to retain Mr. Zappone as their CRO and Messrs. Geraghty, Siano, Saltarelli and Mathews as restructuring support personnel and to compensate CMS pursuant to the terms of the CMS agreement.

-5-

14.     This case is being filed in order to implement a going concern sale of the Debtors'

assets and businesses to HHI pursuant to sections 363 and 365 of the Bankruptcy Code.  If the

HHI sale is approved, a well-financed, competitive entity will be in a position to continue to

supply critical, just-in-time parts to the Debtors' customers, which will enable those customers to

continue operations.  Additionally, substantially all of the Debtors' employees will be offered

employment by HHI.  Finally, many of the Debtors' vendors and suppliers will have a new, well-

financed entity as an ongoing customer.

### RELIEF REQUESTED

15.     By this Motion, the Debtors respectfully request the entry of an order eliminating

the requirement of providing adequate assurance of payment, in the form of additional security

deposits, to the Utility Companies for providing post-petition Utility Services to the Debtors.

16.     In connection with the operation of their businesses and management of their

properties, the Debtors obtain Utility Services, including without limitation, electricity, gas,

water, sewer, telephone services, and/or similar services from approximately 20 different Utility

Companies.  A list of the Utility Companies is attached hereto as Exhibit 1.  The Utility

Companies provide the Debtors with the Utility Services essential to the continuation of their

business.  In the aggregate, the Debtors' utility bills are approximately $750,000 per month.

17.     Pursuant to section 366(a) of the Bankruptcy Code, the Utility Companies are

enjoined from altering, refusing or discontinuing the Utility Services to, or discriminating

against, the Debtors by virtue of the commencement of the Debtors' chapter 11 cases, or solely

on the basis that the Debtors are indebted to the Utility Companies as a result of charges for pre-

petition Utility Services.  Section 366(a) prohibits utilities from altering, refusing or

discontinuing service for the first twenty (20) days (the "Stay Period") following the entry of an

order for relief.

-6-

18.    Upon the expiration of the Stay Period, however, section 366(b) of the Bankruptcy Code provides that a utility company may terminate utility services if a debtor has not furnished adequate assurance of payment in the form of a deposit or other arrangement for services provided and to be provided subsequent to the filing of such debtor's bankruptcy petition.  Section 366(b) of the Bankruptcy Code further provides that, on the request of a party in interest and after notice and a hearing, the Court may order reasonable modification of the amount of the deposit demanded or other security requested as adequate assurance of payment.

19.    Should the Utilities Companies providing utility service to the Debtors refuse or discontinue such service after the Stay Period, the impact to the Debtors' business operations would be devastating.

20.    The Debtors submit that adequate assurance exists based upon: (a) their ability to pay for post-petition services on a current basis going forward as provided for in the proposed debtor-in-possession financing arrangement, and (b) the limited time period (within 60 days of the Petition Date) within which the Debtors intend to sell substantially all of their assets to a well-capitalized purchaser.

21.    Accordingly, for the reasons stated above, the Debtors seek the immediate entry of an order (the "Interim Order"): (a) prohibiting the Utility Companies from altering, refusing or discontinuing services on account of pre-petition invoices; (b) deeming the Utility Companies to be adequately assured of future performance until further order of this Court or an agreement between any Utility Company and the Debtors; (c) providing that if a Utility Company timely objects to entry of the order approving the Motion and requests additional adequate assurance that the Debtors believe is unreasonable, the Debtors shall file a Motion for Determination of Adequate Assurance of Payment (the "Determination Motion") and notice such motion for hearing at the Court's discretion (the "Determination Hearing"); (d) providing that any Utility

-7-

Company that does not timely request additional adequate assurance shall be deemed to have adequate assurance under section 366 of the Bankruptcy Code; and (e) providing that, in the event a Determination Motion is filed or a Determination Hearing is scheduled, any objecting Utility Company shall be deemed to have adequate assurance of payment under section 366 of the Bankruptcy Code without the need for payment of additional deposits or other security until an order of the Court is entered in connection with such Determination Motion or Determination Hearing.  If, after 15 days, no objections to the Interim Order are filed with the Court and served on the Debtors, the Debtors will ask the Court to enter a final Order deeming the Utility Companies to be adequately assured.

22.    The relief requested herein is supported by applicable case law.  Whether a utility company is subject to an unreasonable risk of nonpayment for post-petition services and is, therefore, entitled to receive a new deposit must be determined from the facts and circumstances of each case.  See In re Keydata Corp., 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981).  In this instance, the Debtors can provide adequate assurance of payment through an infusion of cash through the proposed debtor-in-possession financing arrangement.

23.    Additionally, the Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code, which provides:

> The Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

24.    The Debtors believe that given the protections afforded by the proposed debtor-in-possession financing arrangement and the expected short time period for the bankruptcy proceeding, granting the relief requested herein will not prejudice the rights of the Utility Companies under section 366 of the Bankruptcy Code.

CHICAGO_1272839

## NOTICE

25.     Notice of this Motion has been given to: (a) the United States Trustee; (b) counsel to LaSalle Bank, N.A.; (c) the Debtors' known secured creditors; (d) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (e) the District Counsel of the Internal Revenue Service; (f) the Collection Division of the Illinois Department of Revenue; (g) the United States Attorney for the Northern District of Illinois; (h) the Debtors' creditors that are governmental units and (i) the Utility Companies listed on Exhibit 1 to this Motion.  In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## NO PRIOR REQUEST

26.     The Debtors have not previously sought the relief requested herein from this or any other Court.

CHICAGO_1272839

**WHEREFORE**, for the foregoing reasons, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the relief requested and granting to the Debtors such other and further relief as may be just and proper.

Dated:  June 29, 2005                    Respectfully submitted,


                                         /s/ *Jerry L. Switzer, Jr.*
                                         Mark K. Thomas (ARDC #06181453)
                                         Jerry L. Switzer, Jr. (ARDC #06210229)
                                         Peter J. Young (ARDC #06278765)
                                         JENNER & BLOCK LLP
                                         One IBM Plaza
                                         Chicago, Illinois 60611
                                         (312) 222-9350
                                         (312) 840-7374 (Fax)

                                                   and

                                         Joseph M. Fischer
                                         Carson Fischer, P.L.C.
                                         300 East Maple Road
                                         Third Floor
                                         Birmingham, Michigan 48009
                                         (248) 644-4840
                                         (248) 644-1832 (Fax)

                                         Proposed Counsel for Debtors
                                         and Debtors in Possession

## EXHIBIT 1

## Utility Companies

**Arch Wireless**
P.O. Box 660740
Dallas, TX 75266-0770
Telephone:  (800) 763-4557

**Beaver Oil**
6031 Lenzi Ave.
Hodgkins, IL 60525
Telephone:  (708) 354-2371

**BP Canada Energy Marketing Corp.**
240 4 Ave. SW
Calgary AB T2P 2H8
CANADA
Telephone:  (403) 233-1313
Facsimile:  (403) 233-1476

**Chicago Department of Revenue**
Department of Water Management
121 N. LaSalle St.
Room 107
Chicago, IL 60683-6330
Telephone:  (312) 747-4747
Facsimile:  (312) 747-8950

**Com Ed**
System Credit/Bankruptcy Dept.
2100 Swift Drive
Oak Brook, IL 60523
Telephone:  (800) 334-7661

**Constellation New Energy**
550 W. Washington Blvd.
Suite 300
Chicago, IL 60661
Telephone:  (866) 237-7693
Facsimile:  (312) 704-9204

**Cimco Communications, Inc.**
1901 S. Meyers Rd.
Suite 700
Oakbrook Terrace, IL 60181
Telephone:  (877) 691-8080
Facsimile:  (630) 691-8788

**Focal Communications**
135 S. LaSalle St.
Dept. 3546
Chicago, IL 60647
Telephone:  (312) 895-8400
Facsimile:  (312) 895-8403

**Heritage Crystal Clean**
2250 Point Blvd., # 250
Elgin, IL 60123
Telephone:  (877) 938-7948
Facsimile:  (877) 836-5677

**Nextel**
2001 Edmund Halley Dr.
Reston, VA 20191
Telephone:  (703) 433-4000
Facsimile:  (703) 433-4343

**Nicor Gas**
P.O. Box 310
Aurora, IL 60507-0310
Telephone:  (888) 642-6748
Facsimile:  (630) 983-6755

**Peoples Energy**
130 E. Randolph Dr.
Chicago, IL 60601
Telephone:  (312) 240-4000
Facsimile:  (312) 240-4220

**SBC**
Bill Payment Center
Saginaw, MI 48663

-1-

**SBC**
225 W. Randolph St.
Floor 27A
Chicago, IL 60606
Telephone: (800) 340-1734

**Shred All**
400 S. Racine Ave.
Chicago, IL 60609-3313
Telephone: (773) 523-6900
Facsimile: (773) 846-5650

**Sterling Commerce**
8340 W. Bryn Mawr
Suite 575
Chicago, IL 60631
Telephone: (773) 867-8000
Facsimile: (773) 867-8100

**Synergy**
455 E. Eisenhower Pkwy.
Suite 74
Ann Arbor, MI 48108
Telephone: (866) 723-3375
Facsimile: (801) 640-8001

**Verizon Wireless**
777 Big Timber Rd.
Elgin, IL 60123-1488
Telephone: (800) 922-0204

**Waste Management**
720 E. Butterfield Rd.
Lombard, IL 60148
Telephone: (630) 572-8800
Facsimile: (630) 916-8182

CHICAGO_1272839