## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Jernberg Industries, Inc., | ) | Case No. 05 B 25909 |
| Jernberg Sales, Inc., | ) | (Jointly Administered) |
| Iron Mountain Industries, LLC | ) | |
| | ) | |
| | ) | Honorable John H. Squires |
| Debtors. | ) | |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 363(c), 364(c) AND 364(d): (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND USE CASH COLLATERAL; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO SECURE POSTPETITION FINANCING OBLIGATIONS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDER; (IV) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE OF THE HEARING ON THE DEBTORS' MOTION TO INCUR SUCH FINANCING AND USE CASH COLLATERAL ON A PERMANENT BASIS; AND (V) GRANTING RELATED RELIEF

Jernberg Industries, Inc. ("Industries"), Jernberg Sales, Inc. ("Sales") and Iron

Mountain Industries, LLC ("Iron Mountain") as debtors and debtors in possession (collectively,

the "Debtors"), having filed a motion dated June 29, 2005 (the "Motion") for, inter alia:

> (a) authorization, under sections 364(c)(1), (2) and (3) and 364(d)(1) of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtors to obtain post-petition financing (the "DIP Financing") in the form of a revolving credit facility up to a maximum outstanding principal amount of $7,000,000 in accordance with the proposed Credit Agreement among Industries, Sales, and Iron Mountain, as borrowers, and LaSalle Bank National Association, as lender (the "DIP Lender") substantially in the form of Exhibit "A" to the Motion (as amended from time to time, the "DIP Loan Agreement"),[1] and authorization for each Debtor to jointly and severally, unconditionally and irrevocably guaranty as primary obligor and not merely as surety, the full

---

[1] All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the DIP Loan Agreement.

and punctual payment when due of all "Obligations" under and as defined in the DIP Loan Agreement (such Obligations referred to herein as the "DIP Obligations");

(b)    authorization, under sections 364(c)(1), (2) and (3) and 364(d)(1) of the Bankruptcy Code, to obtain from the DIP Lender interim financing (the "Interim Financing") in the form of the DIP Loan Agreement pending the final hearing to consider the DIP Loan Agreement (the "Final Hearing");

(c)    authorization to grant to the DIP Lender assurances for the full and timely payment by and performance of all the DIP Obligations by granting to the DIP Lender (i) pursuant to section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim allowable under section 503(b) of the Bankruptcy Code having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 105, 503(b), 506(c) and 507(b) of the Bankruptcy Code, subject as to priority only to the Carve-Out Reserve provisions of the DIP Loan Agreement and this Order and (ii) pursuant to sections 364(c)(2) and (c)(3) and 364(d)(1) of the Bankruptcy Code, a continuing security interest in and lien on, with first priority, all of the property and interests in property of each of the Debtors now existing or hereafter arising or acquired, excluding the Carve-Out Reserve (as defined herein) and actions to avoid a transfer of property or payment under chapter 5 of the Bankruptcy Code and all proceeds therefrom ("Avoidance Actions"), but including (x) any actions to avoid any such transfers or payments that occur after the Petition Date, and (y) any actions to return retainers held by the Debtors' professionals (the "DIP Collateral");

(d)    authorization and approval, pursuant to section 363(c)(2) of the Bankruptcy Code and Bankruptcy Rule 4001(b) of the Debtors' use of cash collateral of LaSalle Bank National Association in its capacity as a party to (i) that certain Credit Agreement dated December 29, 2000, among Industries and Sales and LaSalle Bank National Association, as lender and agent (the "JIS Lender"), and the financial institutions party thereto (as amended or supplemented, the "JIS Credit Agreement"), and (ii) that certain Credit Agreement dated May 3, 2001 among IM and LaSalle Bank National Association, as lender and agent (the "IM Lender"; collectively with the JIS Lender, the "Prepetition Lenders"), and the financial institutions party thereto (as amended or supplemented, the "IM Credit Agreement"; collectively with the JIS Credit Agreement, the "Prepetition Loan Agreements"); and

(e)    authorization, in accordance with sections 361, 363(c)(2) and 364(d) of the Bankruptcy Code, to provide the Prepetition Lenders adequate protection for and to the extent of any diminution in the value of their interests in the

collateral under the Prepetition Loan Agreements and related agreements, guaranties, documents and instruments (collectively, the "Prepetition Loan Documents") in existence as of the Petition Date (the "Prepetition Collateral"), and to authorize the immediate cash payment to the Prepetition Lenders of all accrued and unpaid interest, fees and expenses under the Prepetition Loan Documents and the continued payment of accrued interest, fees and expenses as described herein.

The Debtors having requested in the Motion that a hearing be scheduled on an expedited and emergency basis to consider the proposed Interim Financing, Debtors' use of Cash Collateral and the adequate protection of the Prepetition Lenders (the "Preliminary Hearing") pending the Final Hearing; this Court having held the Preliminary Hearing after determining that adequate and appropriate notice of the Preliminary Hearing was given pursuant to Rule 4001(c)(1) of the Bankruptcy Rules; considering the Debtors' immediate need for the Interim Financing and the other circumstances of these cases; and this Court having entered, on June 30, 2005 at the conclusion of the Preliminary Hearing, its interim order (the "First Interim Order") authorizing and approving the Interim Financing on an interim basis and scheduling a Status Hearing; and this Court having entered, on July 5, 2005 at the conclusion of the Preliminary Hearing, its interim order (the "Second Interim Order" and together with the First Interim Order, the "Interim Order") authorizing and approving the Interim Financing on an interim basis and scheduling and establishing notice and hearing requirements for the Final Hearing; and the DIP Lender having agreed to provide the DIP Financing on the terms and conditions set forth in the DIP Loan Documents (as defined below) as authorized by this Order; and the Debtors' having provided notice of the Final Hearing as directed by the Interim Order;

Now, upon the record of the Preliminary Hearing and the Final Hearing, and after due deliberation, and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law:

3

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      On June 29, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to an order of the Court issued on or about the Petition Date, these chapter 11 cases are being jointly administered.

B.      The Debtors have continued in the management and operation of their respective businesses and properties as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of these chapter 11 cases. An official committee of unsecured creditors (the "Committee") was appointed on July 11, 2005.

C.      From time to time before the Petition Date, the Prepetition Lenders loaned money or extended other financial accommodations to the Debtors under the Prepetition Loan Documents.

D.      The Debtors have represented that (i) IM was indebted to the IM Lender in the approximate principal amount of $12,333,333.30 as of the Petition Date, together with accrued and unpaid interest, fees and expenses owing to the IM Lender, including reasonable attorneys' fees incurred under or in connection with the IM Prepetition Loan Documents (all of the foregoing are referred to herein collectively as the "IM Prepetition Obligations"), (ii) Industries and Sales were indebted to the JIS Lender in the approximate principal amount of $20,396,158.47 as of the Petition Date, together with accrued and unpaid interest, fees and expenses owing to the JIS Lender, including reasonable attorneys' fees incurred under or in connection with the JIS Prepetition Loan Documents (all of the foregoing are referred to herein collectively as the "JIS Prepetition Obligations") and (iii) subject to the Challenge provisions of

4

paragraph 25 hereof, the Debtors do not have any counterclaim, setoff, defense or objection against the Debtors' Prepetition Lenders or relating to the IM Prepetition Obligations or the JIS Prepetition Obligations (collectively, the "Prepetition Obligations").

E.      The Prepetition Lenders contend, and the Debtors have agreed (subject to the Challenge provisions of paragraph 25 hereof) that they will not contest that, as more specifically described in the Motion and to the extent provided in the Prepetition Loan Documents, the Prepetition Obligations are secured by first priority security interests in and liens on the Prepetition Collateral which constitutes substantially all of the Debtors' tangible and intangible personal property interests and fixtures.

F.      The Prepetition Lenders contend, and the Debtors have agreed (subject to the Challenge provisions of paragraph 25 hereof) that they will not contest that the Prepetition Collateral has been pledged pursuant to valid, enforceable and non-avoidable security agreements, and the liens and security interests granted thereunder were properly perfected.  The Debtors acknowledge that, to the best of their knowledge, there are no other liens or security interests in the Prepetition Collateral, except for the liens and security interests created or permitted under the Prepetition Loan Documents.  The Debtors have further represented (subject to the Challenge provisions of paragraph 25 hereof) that (i) the liens and security interests of the Prepetition Lenders in the Prepetition Collateral were granted for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans secured thereby; and (ii) they are unaware of any action taken by the Prepetition Lenders which would result in the postponement or subordination of the Prepetition Obligations.

G.      Pursuant to section 363(c) of the Bankruptcy Code, the Debtors have requested that the Prepetition Lenders consent to the use of the Prepetition Collateral that

5

constitutes "cash collateral" arising in the ordinary course of business and cash on hand as of the Petition Date (the "Cash Collateral"). Pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the Debtors have requested that the Court approve the imposition of liens to secure the Debtors' obligations under the DIP Loan Agreement.

        H.     The Debtors acknowledge and stipulate (subject to the Challenge provisions of paragraph 25 hereof) that the Prepetition Lenders are entitled to adequate protection pursuant to sections 361, 363(e) and 364(d)(1)(b) of the Bankruptcy Code with respect to the Prepetition Collateral, resulting from the use of the Cash Collateral and the granting of priming liens and security interests in the Prepetition Collateral, including payment of any diminution of value in their interests in the Prepetition Collateral.

        I.     Based on evidence presented to the Court by the Debtors, it appears that (i) an immediate need exists for the Debtors to continue to use a revolving credit facility and authority to use Cash Collateral to continue the operations of the Debtors' businesses, (ii) the DIP Financing under the DIP Loan Documents (as defined below) is superior to any other financing available to the Debtors; (iii) without such facility and authority to use Cash Collateral, the Debtors will be unable to conduct their businesses and to meet their other direct operating expenses, and (iv) without such facility and authority to use Cash Collateral the likelihood of maximizing the value of the Debtors' assets for the benefit of their estates and creditors will be greatly diminished. Absent entry of this Order, it would appear that the Debtors' operations will be seriously disrupted, resulting in immediate and irreparable harm to the estates. Therefore, entry of this Order and approval of the DIP Financing will benefit the Debtors and their estates and maximize the ability of the Debtors to reorganize successfully under chapter 11 and maximize the value of the Debtors' assets.

        **6**

J.      The DIP Lender has agreed to extend, conditioned upon entry of the Interim Order and this Order approving the DIP Loan Documents (as defined below), loans on a revolving basis, including Letters of Credit, for and on behalf of the Debtors, up to a maximum principal amount of $7,000,000 outstanding at any time subject to the Advance Cap and Borrowing Base limitations set forth therein (as such amounts are so calculated from time to time) all upon the terms and conditions set forth in the DIP Loan Agreement and the other agreements, documents and instruments to be entered into in connection therewith (collectively, the "DIP Loan Documents").

K.      Based on Debtors' Motion and the other filings by Debtors herein, in view of the Debtors' current financial condition, financing arrangements and capital structure, the Debtors are unable to obtain an adequate unsecured revolving credit facility allowable under sections 503(b)(1) or 364(c)(1) of the Bankruptcy Code merely as an administrative expense pursuant to sections 364(b) or 364(c)(1) of the Bankruptcy Code. The DIP Lender has conditioned the DIP Financing upon the grant to the DIP Lender of (i) an administrative expense allowable under section 503(b) of the Bankruptcy Code with priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b), 506(c) and 507(b) of the Bankruptcy Code, subject, as to priority, only to the Carve-Out Reserve provisions of the DIP Loan Documents; and (ii) a continuing security interest in and lien on the DIP Collateral, with first priority (subject to the Carve-Out Reserve) over the Prepetition Lenders and any liens granted after the Petition Date to provide adequate protection to the Prepetition Lenders (as set forth below).

L.      The terms of the DIP Financing taken as a whole are more favorable to the Debtors than those available from alternative sources, and such financing will minimize disputes

7

and litigation over collateral values, priming, and the need to segregate Prepetition Collateral from assets acquired after the Petition Date. It appears that the terms of the DIP Financing have been negotiated in good faith and at arm's length among the Debtors and the DIP Lender, are fair and reasonable under the circumstances and are enforceable in accordance with their terms. Consequently, any credit extended to the Debtors by the DIP Lender under the terms of this Order shall be deemed upon entry of this Order to have been extended in good faith as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender is entitled to the benefits and protections of section 364(e) of the Bankruptcy Code upon entry of this Order.

M.      The Prepetition Lenders have filed proofs of claim in these cases (the "Prepetition Lenders' Proofs of Claim"). The Prepetition Lenders' Proofs of Claim were executed and filed in accordance with applicable Bankruptcy Rules and constitute prima facie evidence of the validity and amount of the secured claim of the Prepetition Lenders pursuant to Bankruptcy Rule 3001(f) (subject to the Challenge provisions of paragraph 25 hereof).

N.      The Court has jurisdiction over these chapter 11 cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Order is entered in a "core" proceeding as defined in 28 U.S.C. § 157(b)(2).

O.      The DIP Lender and the Prepetition Lenders have consented to the terms and conditions contained in this Order.

P.      Due and adequate notice of the Motion and the Final Hearing were provided to the parties entitled to such notice.

Now, therefore, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

8

1.      The record in these cases and the findings of fact set forth above are incorporated herein by this reference.

2.      The terms and conditions of the DIP Financing and the DIP Loan Documents are hereby approved and Debtors are authorized to perform in accordance therewith.

### Authorization to Use Prepetition Collateral, including Cash Collateral

3.      For so long as the Debtors remain in compliance with the terms of this Order and the DIP Loan Documents, the Debtors are authorized to use the Prepetition Collateral, including without limitation the Cash Collateral, in a manner consistent with the terms and conditions of the DIP Loan Documents and this Order.

### Authorization to Borrow Under DIP Loan Documents

4.      The Debtors are immediately authorized and empowered to further borrow and incur letter of credit obligations under the DIP Loan Documents, the amounts provided for thereunder and in strict accordance with the DIP Loan Documents and this Order.

5.      The DIP Lender and the Debtors may amend, modify, supplement or waive any provision of the DIP Loan Documents if such amendment, modification, supplement or waiver is not material (in the good faith judgment of the DIP Lender and the Debtors) without any need to apply to, or receive further approval from, the Court. The Debtors shall provide the Committee and the United States Trustee one Business Days' prior written notice of any amendment, modification, supplement or waiver. The consent of the United States Trustee or the Committee shall not be required and they shall retain standing to object thereto. Any material amendment, modification, supplement or waiver shall be subject to approval by the Court on appropriate notice.

9

6.     For so long as the Debtors remain in compliance with the terms of this Order and the DIP Loan Documents, the Debtors are authorized to do and perform all acts, to make, execute and deliver the DIP Loan Documents and all related instruments, agreements and documents, to pay all principal, interest, fees and other expenses, as set forth in the DIP Loan Documents, and, to perform all of their obligations under this Order and the DIP Loan Documents, without further Order of the Court.

### Payment of DIP Obligations

7.     The Debtors are authorized to pay principal, interest and other DIP Obligations as provided in the DIP Loan Documents in accordance with the procedures therein set forth and in this Order.

8.     In consideration of the DIP Financing and other financial accommodations to be made by the DIP Lender under this Order and the DIP Loan Documents, to the extent not already paid pursuant to the Interim Order, the Debtors are hereby authorized, without further order of the Court, to pay to the DIP Lender all fees and charges as set forth in the DIP Loan Documents, and to reimburse the DIP Lender for all out-of-pocket expenses and the reasonable attorneys', accountants', and other professional fees and related disbursements incurred by the DIP Lender in connection with these chapter 11 cases in accordance with the terms of the DIP Loan Documents and this Order including, without limitation, with respect to the preparation and negotiation of this Order and the DIP Loan Documents.  None of the DIP Loan Documents, the Interim Order, nor this Order, nor any provision of any thereof, nor any right arising thereunder, shall be voidable or avoidable under section 548 of the Bankruptcy Code or any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law.

9.      After indefeasible payment in full of the DIP Obligations, Industries and

Sales, on the one hand, and Iron Mountain, on the other hand, shall be subrogated to the rights of

the DIP Lender to the extent that either Industries and Sales, collectively, or Iron Mountain,

individually, paid an amount of the DIP Obligations in excess of the net benefit received by them

from loans advanced and Letters of Credit issued under the DIP Loan Agreement, DIP Collateral

proceeds applied under the DIP Loan Agreement and the use, sale or lease of each of the

Debtor's assets while the DIP Obligations are outstanding.

### Collateral Security; Priority Administrative Claims

10. (a) The DIP Obligations shall have the status of superpriority administrative

expenses, in accordance with section 364(c)(1) of the Bankruptcy Code, over any and all

administrative expenses, whether heretofore or hereafter incurred, specified in, or ordered by the

Court pursuant to, any other section of the Bankruptcy Code, including, without limitation,

sections 503(b), 506(c), and 507(b) of the Bankruptcy Code, but excluding the right to assert

such claim against Avoidance Actions, and subject only to the following (the "Carve-Out

Reserve"):

(1)      amounts payable to the United States Trustee pursuant to 28 U.S.C. §

1930(a);

(2)      the payment of unpaid professional fees, costs and expenses of attorneys,

accountants, investment bankers, financial advisors or other professionals retained by any

of the Debtors or the Committee ("Professional Expenses"), but only to the extent that

such Professional Expenses: (A) were not incurred in the prosecution of claims, causes of

action, actions or proceedings against any agent or lender under the Prepetition Credit

Agreements in respect of the Prepetition Obligations or otherwise, or against the Lender

**11**

in respect of the DIP Obligations or otherwise (the "Excluded Actions"); (B) accrued prior to the earlier of (x) the termination of the Commitment under the DIP Loan Documents, (y) the Closing Date under the Purchase Agreement, and (z) receipt by the Debtors of notice of an Event of Default; and (C) do not exceed an amount equal to the lesser of (x) the amount thereof projected to be accrued through such date in the Cash Budget then in effect (but as to any particular professional, such amount set forth in such Cash Budget for such professional) and (y) the amount thereof actually allowed by the Bankruptcy Court (the amounts described in this subparagraph (2) being the "Pre-Default Professional Carve-Out Reserve"); and

(3) After notice to the Debtors that any Event of Default has occurred, the payment of Professional Expenses during the continuance of such Event of Default (other than Professional Expenses of ordinary course of business professionals employed in the ordinary course of business for a specific purpose pursuant to sections 105(a) and/or 327(b) of the Bankruptcy Code), but only to the extent such Professional Expenses: (A) are not incurred in the prosecution of Excluded Actions; (B) are actually allowed by the Bankruptcy Court, and (C) do not exceed $500,000 in the aggregate (the amounts described in this subparagraph (3) being the "Post-Default Professional Carve-Out Reserve", and collectively with the Pre-Default Professional Carve-Out Reserve, the "Professional Carve-Out Reserve"); provided, however, that in no event shall any of the Professional Carve-Out Reserve include any fees or expenses arising after the conversion of any Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

(b)     In the event that the transactions set forth in the Purchase Agreement (as defined in the DIP Loan Agreement) are not consummated, the Debtors, the Lender and

12

the Prepetition Lenders agree, without limiting any rights or remedies of the Lender or Prepetition Lenders, to discuss in good faith a budget for concluding the Chapter 11 Cases and winding down the Debtors' business affairs;

(c)    Except with respect to the Carve-Out Reserve, no other claim or expense, having a priority senior to or pari passu with that granted to the DIP Lender in this Order, shall be granted in these chapter 11 cases, or any superseding chapter 7 case, while any portion of the DIP Obligations or the Commitment under the DIP Loan Documents thereunder remain outstanding; and

(d)    Notwithstanding the foregoing, the Debtors shall be permitted to pay, as the same may become due and payable (i) administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of their businesses; (ii) subject to the provisions of paragraph 10 hereof and provided that no Event of Default has occurred and is continuing, compensation and reimbursement of expenses to professionals allowed by this Court (whether under an interim compensation order or otherwise) and payable under sections 330 and 331 of the Bankruptcy Code (provided that nothing in this subparagraph (ii) shall abrogate the Debtors' right to make payments to professionals covered by the Professional Carve-Out Reserve following an Event of Default), and (iii) any other pre- or post-Petition Date expenses of the Debtors, including adequate protection payments, to the extent approved by an Order of this Court and not otherwise prohibited by the terms of the DIP Loan Documents. Notwithstanding the foregoing, nothing in this Order shall preclude the DIP Lender from asserting any objections to professional fees and expenses sought to be paid under the provisions of sections 330, 331 and 503 of the Bankruptcy Code.

13

## Collateral Security for DIP Obligations

11.   In accordance with, and consistent with, the terms of the DIP Loan Documents, as security for the full and timely payment and performance of the DIP Obligations, the DIP Lender is hereby granted pursuant to sections 364(c)(2) and (c)(3) and 364(d)(1) of the Bankruptcy Code, a continuing Lien on the DIP Collateral. The Liens authorized hereunder shall have first priority, except as otherwise provided in the DIP Loan Documents and this Order, including in respect of the Carve-Out Reserve. Moreover, notwithstanding any provision hereof to the contrary, all claims payable from the Carve-Out Reserve shall have priority over all of the liens, security interests and claims of the Prepetition Lenders.

12.   Other than with respect to Permitted Senior Liens (which Permitted Senior Liens include, for purposes of this Order, Liens which attached Prepetition, are perfected Postpetition in accordance with applicable law and the Bankruptcy Code, but are not avoidable as of the Petition Date), the liens and security interests granted hereunder and in the DIP Loan Documents shall not be subordinated to or pari passu with any other lien or security interest, however arising. The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any DIP Collateral.

## Perfection of DIP Lender's Liens

13.   The liens and security interests in favor of the DIP Lender described herein and in the DIP Loan Documents shall have been deemed valid, binding, enforceable and perfected upon entry of the Interim Order, and shall not be subject to any lien or security interest which is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code. Notwithstanding anything to the contrary in the DIP Loan Documents, the Interim Order or this Order, the avoidance of a security interest or lien on, or claim with respect

**14**

to, property of any Debtor under sections 544, 547, 548, 549, 550, or 553 of the Bankruptcy Code shall not diminish or otherwise affect the validity or priority of the security interests or liens granted with respect to such property to the DIP Lender hereby or under the Interim Order or in the DIP Loan Documents or any superpriority claims granted to Lender hereunder or under the Interim Order.

14.     The DIP Lender shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the liens and security interests granted by or pursuant to the Interim Order, this Order or pursuant to the DIP Loan Documents.

15.     The DIP Lender may, in its sole discretion from time to time, file any such financing statements, mortgages, notices of lien or similar instruments, take possession of any DIP Collateral securing the DIP Obligations to the extent needed to perfect DIP Lender's security interest in said collateral (subject to the rights of the Debtors to use such collateral in accordance with the DIP Loan Documents), or take any other action to validate or perfect any such security interest, mortgage or lien, as the DIP Lender shall deem appropriate in accordance with the terms of the DIP Loan Documents and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order. The Debtors and their officers are hereby directed to furnish to the DIP Lender any information reasonably requested by the DIP Lender in connection with any such filings.

16.     A certified copy of this Order or the Interim Order, in the discretion of the DIP Lender, may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing

**15**

offices are hereby directed to accept such certified copy of this Order or the Interim Order for filing and recording.

### Reporting and Cash Management Matters

17.    The Debtors shall establish and maintain an account or accounts at banks or financial institutions in accordance with the provisions of the DIP Loan Documents, into which all cash proceeds, payments, accounts receivable and cash proceeds thereof and other collections of DIP Collateral shall be immediately deposited in kind by Debtors, all of which shall be applied as provided in the DIP Loan Agreement. The Debtors are hereby authorized to obtain advances and incur letter of credit obligations under the DIP Loan Documents in accordance with the provisions thereof.

18.    The Debtors promptly shall provide the DIP Lender and the Committee (its members and professionals) reasonable access during reasonable business hours to Debtors' personnel, books and records and the DIP Collateral.

### Termination Events

19.    Notwithstanding the provisions of section 362 of the Bankruptcy Code and without order of or application or motion to the Court, in the event of (a) the failure of any Debtor to perform any of its obligations under this Order, (b) the occurrence and continuance of an Event of Default under the DIP Loan Documents, or (c) the entry of an order avoiding and requiring repayment of any portion of the payments made on account of the DIP Obligations or the payments made as provided in paragraphs 7 and 8 of this Order, then and upon the occurrence of any of the foregoing (each a "Termination Event"), and at all times during the continuance thereof, the DIP Lender may, on five (5) Business Days prior written notice to the Debtors, as well as to the United States Trustee and the Committee, (i) terminate forthwith the

Commitment and the Debtors' authority to use Cash Collateral, (ii) declare the DIP Loans and all

other DIP Obligations to be immediately due and payable, and (iii) exercise, on behalf of the DIP

Lender, any and all rights and remedies allowed under the DIP Loan Documents.  The DIP

Lender's failure to exercise any of the rights under this paragraph shall not constitute a waiver of

any of their rights.

        20.    The obligations of the Debtors and the rights, claims, liens, security

interests, and priorities of the DIP Lender shall remain unimpaired and unaffected by the

termination of the DIP Financing pursuant to paragraph 19 hereof.

<b><u>Access Requirements</u></b>

        21.    The Debtors' obligations to allow access to representatives of the DIP

Lender and to provide information with respect to and otherwise comply with the undertakings

and agreements set forth in this Order and the DIP Loan Documents shall continue beyond and

survive the expiration of the DIP Financing until such time as no Commitment by the DIP

Lender remains outstanding under the DIP Loan Agreement and after the Debtors shall have

indefeasibly paid in full in cash all fixed and liquidated DIP Obligations then outstanding on

terms satisfactory to the DIP Lender and the DIP Lender shall have received adequate cash

collateral in its reasonable judgment to secure payment of the estimated amount of any known

contingent or unliquidated DIP Obligations that have been asserted by the DIP Lender prior to

such time.

<b><u>Survival of Rights and Remedies</u></b>

        22.    Without the consent of the DIP Lender, the Debtors shall not seek entry of

an order dismissing any of the cases under section 1112 of the Code or otherwise unless prior to

the entry thereof (i) all obligations under the DIP Loan Documents have been indefeasibly paid

17

in full in cash or (ii) all assets of the Debtors have been liquidated and the proceeds distributed in

accordance with the priorities established by this Order and the Bankruptcy Code.  The liens,

security interests, administrative priorities and other rights and remedies granted to the DIP

Lender, by the provisions of the Interim Order and this Order and any actions taken pursuant

hereto shall survive, and shall not be modified, altered or impaired in any manner (a) by any

other financing or extension of credit or incurrence of debt by any of the Debtors (under section

364 of the Bankruptcy Code or otherwise), (b) the entry of an order confirming any plan of

reorganization, or (c) the entry of an order converting any of these cases to cases under chapter 7,

dismissing any of these chapter 11 cases or terminating the joint administration of these chapter

11 cases, or by any act or omission whatsoever.  The terms and provisions of this Order and the

DIP Loan Documents shall continue in these chapter 11 cases if they cease to be jointly

administered, and in any superseding chapter 7 cases under the Bankruptcy Code, and the liens

and security interests granted to the DIP Lender, and the superpriority status of the

administrative expenses and payment provisions contained in the DIP Loan Documents, the

Interim Order, and this Order shall continue in effect until the DIP Obligations are indefeasibly

satisfied and discharged and the Commitment are terminated.  This Court shall retain exclusive

jurisdiction notwithstanding such dismissal over the Debtors' cases for the purpose of (A)

validating the priority of security interests and liens granted hereunder and under the DIP Loan

Documents and (B) enforcing and implementing payment to the DIP Lender from the assets of

the Debtors according to the terms of this Order.

### Adequate Protection of Prepetition Lenders

23.     Without prejudice to the Prepetition Lenders' right to seek additional

adequate protection, as adequate protection to the Prepetition Lenders for and to the extent of any

Postpetition diminution, if any, in the value of the Prepetition Lenders' interest in the Prepetition

Collateral, as such Prepetition Collateral existed as of the Petition Date, resulting from (a) the

Debtors' granting of priming liens on and security interests in the Prepetition Collateral pursuant

to section 364(d) in favor of the DIP Lender, including, without limitation, application of the

provisions of paragraph 9 of this Order, (b) the use, sale, or lease of the Prepetition Collateral,

including Cash Collateral, pursuant to section 363, (c) imposition of the automatic stay pursuant

to section 362(a), and (d) without duplication of diminution arising under clause (a) of this

paragraph 23, the establishment of the Carve-Out Reserve and the priority of claims thereunder

(collectively, the "Diminution"):

> (1) Effective upon the date of the Interim Order and without the necessity of the
> execution of mortgages, security agreements, pledge agreements, financing statements or
> otherwise, but only to the extent of the Diminution, the Prepetition Lenders are granted
> (i) continuing valid, perfected and unavoidable security interests and liens in the
> Prepetition Collateral under the Prepetition Loan Documents and with the same relative
> priority as existed Prepetition, but only to the extent that the security interests and liens of
> the Prepetition Lenders in and against the Prepetition Collateral are valid, perfected and
> non-avoidable, subject only to liens and security interests granted pursuant to the DIP
> Loan Documents, the Interim Order and this Order to secure the DIP Obligations and the
> Carve-Out Reserve; (ii) replacement valid, perfected and unavoidable security interests
> and liens in and against all proceeds, products, offspring, or profits of the Prepetition
> Collateral to the extent provided under section 552(b) of the Bankruptcy Code and with
> the same relative priority as existed Prepetition, subject only to liens and security
> interests granted pursuant to the DIP Loan Documents, the Interim Order and this Order

**19**

to secure the DIP Obligations and the Carve-Out Reserve; and (iii) additional valid, perfected and unavoidable security interests and liens against all property of the Debtors whether existing on or generated or acquired on or after the Petition Date, including, without limitation, the rights of the Debtors under paragraph 9 of this Order and proceeds thereof, but excluding Avoidance Actions other than (x) any actions to avoid any such transfers or payments that occur after the Petition Date, and (y) any actions to return retainers held by the Debtors' professionals, subject only to liens and security interests granted pursuant to the DIP Loan Documents, the Interim Order and this Order to secure the DIP Obligations, Permitted Senior Liens and the Carve-Out Reserve;

(2) To the extent of the Diminution, the Prepetition Obligations shall have the status of superpriority administrative expenses in accordance with section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses, whether, heretofore or hereafter incurred, specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b), 506(c), and 507(b) of the Bankruptcy Code, subject only to the superpriority administrative expense claims arising from the DIP Obligations and the Carve-Out Reserve;

(3) The Prepetition Lenders shall receive (i) any and all financial reporting and other information to which the DIP Lender are entitled under the DIP Loan Documents and (ii) access to inspect the Debtors' properties, books and records;

(4) In the event of a Termination Event and exercise by the DIP Lender of any remedies related thereto, and notwithstanding section 362 of the Bankruptcy Code, after five (5) Business Days notice to the Debtors, the Debtors' authorization to use Cash Collateral shall terminate and the Prepetition Lenders may exercise any and all rights and

20

remedies under the Prepetition Loan Documents, subject to the rights and remedies of the DIP Lender under the DIP Loan Documents; and

(5) The Prepetition Lenders shall, upon entry of this Order, receive from the Debtors cash payments for all accrued and unpaid interest outstanding under the Prepetition Loan Documents, all Letter of Credit fees outstanding from time to time under the Prepetition Loan Documents and all other accrued and unpaid fees and disbursements owing the Prepetition Lenders and incurred prior to the Petition Date. The Prepetition Lenders shall receive from the Debtors, on the first business day of each month, cash payments equal in amount to all accrued and unpaid interest on the unpaid principal balance of the loans outstanding under the Prepetition Loan Documents; provided, however, that if it is determined that Prepetition Lenders are not entitled to such interest under section 506(b) of the Bankruptcy Code, then such sums paid to the Prepetition Lenders shall be deemed a reduction of the principal of the applicable Prepetition Loans.

### Other Adequate Protection

24.    As adequate protection to Kay Manufacturing Company ("Kay") for and to the extent of any diminution in the value of any valid, perfected and unavoidable Prepetition security interests of Kay in any accounts or inventory of Industries (the "Kay Collateral") resulting from (a) the use, sale, or lease of the Kay Collateral pursuant to section 363 and (b) imposition of the automatic stay pursuant to section 362(a), Kay is granted replacement valid, perfected and unavoidable security interests and liens in and against all proceeds, products, offspring, or profits of the Kay Collateral arising after the entry of this Order to the extent provided under section 552(b) of the Bankruptcy Code and with the same relative priority as

existed Prepetition, subject to the replacement security interests and liens of the Prepetition Lenders arising under this Order.

### Challenge to Prepetition Liens

25.    The Debtors covenant not to sue or otherwise to dispute the validity, enforceability or perfection of any Prepetition security interest, mortgage or lien of the Prepetition Lenders, and the validity and enforceability of the Prepetition Obligations. The Debtors agree not to assert defenses, offsets, claims or counterclaims of any kind against the Prepetition Lenders with respect to the Prepetition Loan Documents, and the Prepetition Obligations, including, but without limitation, all claims for the recovery of property or the avoidance of transfers under sections 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or otherwise. Notwithstanding the foregoing and all adequate protection granted to the Prepetition Lenders hereunder, the Committee or any other party in interest (other than the Debtors) with requisite standing shall be permitted to investigate, and by means of an adversary proceeding or other proceeding permitted by the Bankruptcy Code and Bankruptcy Rules, to challenge and assert Avoidance Actions with respect to the validity, enforceability, perfection, amount and/or extent of the Prepetition Obligations and Prepetition liens and security interests of the Prepetition Lenders asserted in any asset of the Debtors (each a "Challenge"). Any Challenge in this or any Court must be commenced on or before the earlier of (i) the date which is 55 days after the Petition Date; or (ii) the deadline established by the Court for submission of bids in connection with the Debtors' motion for approval of the transactions contemplated under the Purchase Agreement. If no Challenge is commenced on or prior to such date, all parties in interest shall be deemed to have waived the right to Challenge and, without any further order, this Order shall be deemed to confirm the validity, enforceability, perfection,

**22**

priority and amount of the Prepetition Obligations and the liens, security interests and mortgages which secure the Prepetition Obligations.

## Modification of Automatic Stay

26.     The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the DIP Lender, and the Prepetition Lenders to take any action authorized or contemplated by this Order or the DIP Loan Documents and to carry out the terms thereof, subject, however, to the satisfaction of any notice, procedural and other conditions contained in this Order, the DIP Loan Documents, or the Prepetition Loan Documents.

## Miscellaneous Provisions

27.     This Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Lenders, and the Debtors and their respective successors and assigns, including without limitation, any chapter 11 or chapter 7 trustee hereinafter appointed or elected as a representative of any of the Debtors' estates; provided, however, that the DIP Lender shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee appointed or elected for the estate of any of the Debtors.

28.     If any provision of this Order is hereafter modified, vacated or stayed by subsequent order of this or any other court for any reason, such modification, vacation or stay shall not affect the validity and priority of any of the DIP Obligations incurred under this Order and prior to the effective date of any such modification, vacation or stay, the validity, enforceability or priority of the DIP Obligations shall be governed in all respects by the original provisions of this Order, and the DIP Lender shall be entitled to all of the rights, privileges and benefits granted herein.

23

29.    The Interim Order is deemed amended to conform with the terms of this Order.

30.    Other than as expressly set forth above, no rights are created hereunder for the benefit of any third party, any creditor (other than the DIP Lender or the Prepetition Lenders) or any direct, indirect or incidental beneficiary.

31.    In taking any actions related to or in connection with this Order, the Interim Order, the Prepetition Obligations, the DIP Obligations, the Prepetition Loan Documents, the DIP Loan Documents, the Prepetition Collateral or the DIP Collateral, neither the Prepetition Lenders nor the DIP Lender shall be liable to any entity or be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" with respect to the operations or management of the Debtors.

32.    No waiver, modification, or amendment of any of the provisions of this Order shall be effective unless set forth in writing, signed by the parties required under the DIP Loan Documents, the Prepetition Loan Documents and approved by the Court.

33.    In the event of any conflict between the terms of this Order and any agreement heretofore or hereafter entered into by and among any of the Debtors, the DIP Lender, or the Prepetition Lenders, including, without limitation, the DIP Loan Agreement, the terms of this Order shall govern and control.

34.    Without prejudice to the rights of any party-in-interest to seek substantive consolidation of any of the Debtors, nothing contained in this Order, the Interim Order or the DIP Loan Agreement shall be deemed to substantively consolidate the estates of the Debtors or to treat the Debtors as if their estates were substantively consolidated.

24

35.     The provisions of this Order shall be effective immediately upon entry of this Order, and the Clerk of the Court is hereby directed to forthwith enter this Order on the docket of this Court maintained in regard to these cases.

Entered: August ⁄, 2005

AUG - 4 2005

_____
United States Bankruptcy Judge