# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 05 B 25909 |
|  | ) | (Jointly Administered) |
| JII LIQUIDATING, INC. f/k/a JERNBERG | ) | Chapter 7 |
| INDUSTRIES, INC.; JSI LIQUIDATING, | ) | Judge John H. Squires |
| INC. f/k/a JERNBERG SALES, INC.; and | ) |  |
| IM LIQUIDATING, LLC f/k/a IRON | ) |  |
| MOUNTAIN INDUSTRIES, LLC, | ) |  |
|  | ) |  |
| Debtors. | ) |  |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Premium Assignment Corporation ("PAC") for adequate protection or to lift the automatic stay with respect to unearned insurance premiums.[1] Richard J. Mason, the Chapter 7 trustee (the "Trustee") for the jointly administered estates of JII Liquidating, Inc., formerly known as Jernberg Industries, Inc. ("Jernberg"), JSI Liquidating, Inc., formerly known as Jernberg Sales, Inc., and IM Liquidating, LLC, formerly known as Iron Mountain Industries, LLC (collectively, the "Jernberg Companies") objects to the relief sought. The heart of the dispute is whether PAC's claim is subject to the filing requirements of the Illinois Uniform Commercial Code and whether its interest in the unearned premiums is subordinate to the Trustee's hypothetical lien creditor powers under 11 U.S.C. § 544(a).

---

[1] Although PAC's motion requests adequate protection or modification of the stay, it now seeks termination of the automatic stay because of certain relief that this Court has already granted to PAC. The details of the requested relief as well as a summary of what relief the Court has granted to date will be discussed *infra* in Section II.

-2-

For the reasons set forth herein, the Court concludes that PAC's interest in the unearned premiums is not subject to the requirements of the Illinois Uniform Commercial Code. Further, the Trustee's claim under § 544(a) is not superior to PAC's interest in the unearned premiums. The Court grants PAC's motion and finds that pursuant to 11 U.S.C. § 362(d), cause exists to terminate the automatic stay in order to allow PAC to receive the refund of the unearned insurance premiums in the sum of $114,112.72, currently held in escrow by the Trustee, to partially satisfy its principal unpaid claim against Jernberg, plus unpaid interest, attorney's fees, and costs.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## II. FACTS AND BACKGROUND

Many of the relevant facts are undisputed. PAC is a corporation in the business of financing the purchase of insurance policies by insureds. (PAC Ex. A, Kelton M. Farris Aff. ¶ 2.) The Jernberg Companies were formerly in the business of producing automotive parts.[2]

Jernberg purchased three insurance policies (the "Insurance Policies") from Thilman and Fillippini, L.L.C., an insurance agent. (Trustee Ex. Nos. 1-3.) Under date of March 23, 2005,

---

[2] On June 29, 2005, the Jernberg Companies filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. An order was entered on June 30, 2005, for joint administration of those cases. Subsequently, on September 26, 2005, an order was entered that converted the cases to Chapter 7, effective October 10, 2005. Shortly thereafter, the Trustee was appointed.

·3·

PAC entered into a premium finance agreement[3] (the "Finance Agreement") with Jernberg, which

was executed by a Jernberg agent on April 4, 2005, and executed by Thilman and Fillippini,

L.L.C. on April 11, 2005. (PAC Ex. A-1.) Pursuant to the Finance Agreement, PAC financed

$271,803.65 of the insurance premiums for the Insurance Policies. (*Id*; PAC Ex. A, Farris Aff.

¶ 4.) PAC was to be repaid the financed premium plus a $6,520.05 finance charge over a period

of ten months at the rate of $27,832.37 per month. (*Id.*)

Paragraph 1 of the Finance Agreement provides for PAC to retain a security interest in all

unearned premiums under the Insurance Policies and states in relevant part as follows:

---

[3] An insurance premium finance agreement has been described as follows:

> An insurance premium finance agreement is essentially a loan
> collateralized by a purchase money security interest. The
> insured makes a down payment, and funds the balance of the
> premium with an advance from the premium finance
> company. . . . The entire premium is typically prepaid to the
> insurer, but is "earned" during the term covered by the
> insurance policy. . . . If the policy is cancelled before the end
> of the term, the insurer must refund the unearned portion....

> The unearned premium serves as collateral for the premium
> financing loan. Typically, the insured executes a premium
> finance agreement agreeing to pay off the financed portion
> plus related finance charges in installments, . . . assigns the
> unearned premiums to the premium financier as security for
> its obligations, . . . and grants the premium financier a limited
> power of attorney to cancel the policies in the event of the
> insured's default. . . .

*Savage & Assocs., P.C. v. A.I. Credit Corp. (In re Teligent, Inc.)*, 337 B.R. 39, 43-44 (Bankr.
S.D. N.Y. 2005). *Accord In re Megamarket of Lexington, Inc.*, 207 B.R. 527, 535 (Bankr.
E.D. Ky. 1997) ("By executing the premium finance agreement, the debtor generally gives
to the lender a security interest in all unearned premiums and dividends, and also grants the
lender a power of attorney to cancel the policies and receive the unearned premium[s] in the
event of the debtor's default in making payments to the lender.").

-4-

> To secure payment of all sums due under this [Finance]
> Agreement, [Jernberg] grants [PAC] a security interest in any
> unearned premiums or other sums which may become payable
> under the Scheduled Policies of Insurance shown on page 3.

(PAC Ex. A-1 ¶ 1.) Further, paragraph 2 of the Finance Agreement grants PAC an irrevocable

limited power of attorney to cancel the Insurance Policies should Jernberg default in making

payments under the Finance Agreement. (*Id.* ¶ 2.) Paragraph 7 provides that should Jernberg

default and fail to pay any sums required by the Finance Agreement, interest continues to accrue

on the unpaid balance at the maximum rate allowed by applicable law. (*Id.* ¶ 7.) In addition,

pursuant to paragraph 11 of the Finance Agreement, Jernberg is required to pay PAC's attorney's

fees and costs incurred in collecting any amounts owed under the Finance Agreement. (*Id.* ¶ 11.)

The first page of the Finance Agreement specifically refers to the "Scheduled Policies of

Insurance shown on page 3." (*Id.* ¶ 1.) Page three of the Finance Agreement lists the Insurance

Policies as well as the numbers and letters of those policies as follows: (1) policy number

ERP53440000 with American Guarantee & Liability;[4] (2) policy number 2685601 with Illinois

National Insurance Company;[5] and (3) policy number 73514150 with Great Northern Insurance[6]

(collectively the "Insurers"). (*Id.* p. 3.) On April 15, 2005, PAC sent notices to each of the

---

[4] With respect to this policy, the actual number is ERP5344400-00. The number "4" and a hyphen are missing from the policy number as listed in the Finance Agreement. These discrepancies will be discussed *infra* in Section IV.C.

[5] With respect to this policy, the actual policy number is BE 2685601. The letters "BE" are missing from the policy description in the Finance Agreement. This discrepancy will be discussed *infra* in Section IV.C.

[6] With respect to this policy, the actual number is 7351-41-50 CHI. The hyphens and the letters "CHI" are missing from the policy number as listed in the Finance Agreement. These discrepancies will be discussed *infra* in Section IV.C.

-5-

Insurers informing them that the premiums on each of the Insurance Policies were being financed

by PAC, which received a power of attorney from Jernberg. (PAC Group Ex. E; Trustee Ex. Nos.

6-9.)

On October 4, 2005, PAC filed its motion for adequate protection or to lift the automatic

stay, which was supported by the affidavit of Kelton M. Farris ("Farris"), the vice president of

collections for PAC, as well as a copy of the executed Finance Agreement and a clearer, unsigned

copy thereof. According to PAC, Jernberg was in default under the Finance Agreement for failure

to make the September 18, 2005 payment and all subsequent payments. (PAC Ex. A, Farris Aff.

¶ 6.) As of October 2005, Jernberg was indebted to PAC in the sum of $114,112.72. (*Id.*)[7] PAC

maintains that as of the date of the filing of the bankruptcy cases, June 29, 2005, the total prepaid

but unearned premiums[8] under the Insurance Policies, which constitute PAC's security for

Jernberg's debt under the Finance Agreement, total approximately $184,502.00. (*Id.* ¶ 5.) PAC

contends that because the premiums are earned at the rate of approximately $788.00 per day and

PAC's collateral diminishes at that rate, as of October 13, 2005, its collateral will have diminished

in value to approximately $100,924.00. (*Id.* ¶ 7.) PAC requested in its motion that the Court

---

[7] As of December 13, 2005, that figure was the same. (PAC Ex. C.)

[8] The term "unearned premium has been explained by one court as follows:

> [A]lthough an insurance policy covering a long period into
> the future may be paid for in advance, the insurer earns the
> premiums only as each "daily unit" of insurance is extended
> to the insured. Thus, on any given day during the term of an
> insurance policy, there is a fund of unearned premiums which
> must be refunded upon cancellation of the coverage.

*Megamarket of Lexington,* 207 B.R. at 532-33 (*quoting Drabkin v. A.I. Credit Corp.*, 800
F.2d 1153, 1155 (D.C. Cir. 1986)).

-6-

order adequate protection payments or relief from the automatic stay in order to permit PAC to cancel the Insurance Policies and obtain the unearned premiums in order to preserve PAC's remaining security interest.

On October 11, 2005, the Court entered an order lifting the automatic stay to permit PAC to cancel the Insurance Policies effective September 7, 2005. (Trustee Ex. No. 4.) In addition, that order provided that the Insurers were to hold the unearned premiums in trust pending final determination as to the rightful ownership of the unearned premiums. (*Id.*) On October 13, 2005, PAC sent notices to the Insurers cancelling the Insurance Policies effective September 7, 2005. (PAC Ex. A, Farris Aff. ¶ 6.)

The Court entered a second order on May 2, 2006, that authorized the Insurers to pay the refunds of the prepaid but unearned premiums to the Trustee. (Trustee Ex. No. 5.) That order required the Trustee to keep those funds in a separate, interest-bearing escrow account, and prohibited the disbursement of the money except by further order of the Court. (*Id.*) The order also provided that any interest in or claims to the refunds by PAC or the Trustee shall continue in and attach to the funds held in the escrow account. (*Id.*) The Insurers have refunded prepaid unearned premiums in the total amount of $138,452.23, which the Trustee current holds in the escrow account. (PAC Ex. G.)

On May 30, 2006, the Court held an evidentiary hearing on PAC's motion. As a result of the Court's previous orders and the relief granted therein, PAC now seeks to terminate the stay. At the hearing, Farris testified. Thereafter, the Court took the matter under advisement.[9]

---

[9] The Court gave PAC and the Trustee the opportunity to submit their closing arguments in writing. Both parties filed written closing arguments and therein made reference to the transcript of the evidentiary hearing, which was apparently transcribed by

-7-

## III. APPLICABLE STANDARDS

### A. Motions to Terminate or Modify the Automatic Stay

The automatic stay under 11 U.S.C. § 362(a) was enacted "'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'" *In re Pleasant*, 320 B.R. 889, 893 (Bankr. N.D. Ill. 2004) (*quoting In re Rexene Prod. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)). Section 362(d) of the Bankruptcy Code provides for termination or modification of the automatic stay and states in pertinent part as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if–
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d).

Thus, § 362(d) provides two grounds under which relief from the automatic stay may be granted. *In re Jackson*, No. 98 B 15483, 1999 WL 703093, at *3 (Bankr. N.D. Ill. Sept. 9, 1999) (*citing In re 8th St. Vill. Ltd. P'ship*, 88 B.R. 853, 855 (Bankr. N.D. Ill.), *aff'd*, 94 B.R. 993 (N.D. Ill. 1988)). The first ground is cause, including lack of adequate protection. 11 U.S.C. §

the certified shorthand reporter upon request of one or both of the parties. However, neither PAC nor the Trustee bothered to furnish a copy of that transcript to the Court.

-8-

362(d)(1). "Cause" has not been clearly defined and is determined on a case-by-case basis. *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991). The second ground is that the debtor does not have equity in the property and the property is unnecessary to an efficacious reorganization. 11 U.S.C. § 362(d)(2).

As the party requesting relief from the stay, PAC bears the burden on the issue of Jernberg's equity in the unearned insurance premiums. *See* 11 U.S.C. § 362(g)(1). *See also Fed. Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 208 (N.D. Ill. 1993); *In re Standfield*, 152 B.R. 528, 534 (Bankr. N.D. Ill. 1993). The Trustee, opposing such relief, has the burden of proof on all other issues. *See* 11 U.S.C. § 362(g)(2). *See also Fed. Nat'l Mortgage*, 153 B.R. at 208; *Standfield*, 152 B.R. at 534. The decision to terminate or otherwise modify the automatic stay pursuant to § 362(d) is committed to the sound discretion of the bankruptcy court. *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995); *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985); *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982).

PAC asserts a security interest or lien in the unearned insurance premiums and seeks to have the automatic stay terminated so that it can collect those premiums. As a creditor seeking to terminate the stay, PAC has the burden of showing the existence, the validity, and the perfection of its security interest in the unearned insurance premiums. *See In re S. Ill. Railcar Co.*, 301 B.R. 305, 309 (Bankr. S.D. Ill. 2002). The Bankruptcy Code defines the term "security interest" as a "lien created by an agreement." 11 U.S.C. § 101(51). State law determines whether a valid security interest exists in property. *See Butner v. United States*, 440 U.S. 48, 54-57 (1979) (finding that the existence, nature, and extent of a security interest in property is governed by state

-9-

law); *see also In re Martin Grinding & Mach. Works, Inc.*, 793 F.2d 592, 594 (7th Cir. 1986)

(*citing Butner*). The parties do not dispute that Illinois law governs in this matter.

## IV.  DISCUSSION

### A.    Whether Interests in Unearned Insurance Premiums Are Governed By Article 9 of the Uniform Commercial Code

Initially, the Court will address the issue of whether interests in unearned insurance

premiums are governed by Article 9 of the Uniform Commercial Code (the "UCC"). Effective

July 1, 2001, Illinois adopted revised Article 9 of the UCC. *See* 810 ILL. COMP. STAT. 5/9-101 *et*

*seq.* (2004). Article 9 of the UCC governs secured transactions. Section 5/9-109 addresses the

scope of Article 9 and sets forth the extent to which Article 9 does not apply. Specifically, § 5/9-

109(d)(8) provides as follows:

> (d) Inapplicability of Article. This Article does not apply to:
>
>> (8) a transfer of an interest in or an assignment of
>> a claim under a policy of insurance, other than an
>> assignment by or to a health-care provider of a
>> health-care insurance receivable and any
>> subsequent assignment of the right to payment, but
>> Sections 9-315 and 9-322 apply with respect to
>> proceeds and priorities in proceeds[.]

810 ILL. COMP. STAT. 5/9-109(d)(8).[10]

---

[10] The predecessor to § 9-109(d)(8) was § 9-104(g). Section 9-104(g) provided that
Article 9 did not apply "to a transfer of an interest or claim in or under any policy of
insurance, except as provided with respect to proceeds (Section 9-306) and priorities in
proceeds (Section 9-312)[.]" 810 ILL. COMP. STAT. 5/9-104(g) (2000). The Official
Comment to § 9-109 states that "[s]ubsection (d)(8) narrows somewhat the broad exclusion
of interests in insurance policies under former Section 9-104(g). This Article now covers
assignments by or to a health-care provider of 'health-care-insurance receivables' (defined
in Section 9-102)." 810 ILL. COMP. STAT. 5/9-109 cmt. ¶ 13.

-10-

"[T]he draftsmen [of the UCC] felt that such transactions are adequately covered by existing law and do not fit within the framework of Article 9." *Uly-Pak, Inc. v. Consol. Ins. Agency, Inc. (In re Uly-Pak, Inc.)*, 101 B.R. 551, 553-54 (Bankr. S.D. Ill. 1989) (internal quotation omitted).

The Trustee maintains that in order to be exempt from Article 9 of the UCC, the transaction must constitute either: (1) a transfer of an interest in an insurance policy; or (2) an assignment of a claim under a policy of insurance. According to the Trustee, the Finance Agreement did not involve either type of transaction, and, therefore, it is governed by the UCC.

The cases that have addressed the issue of whether Article 9 of the Illinois UCC is applicable to a security interest in unearned insurance premiums have held uniformly that Article 9 does not apply.[11] *See Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp. (In re Schwinn Bicycle Co.)*, 200 B.R. 980, 988 n.10 (Bankr. N.D. Ill. 1996) (holding that premium financier was secured creditor and its security interest in unearned premiums was exempt from filing under Article 9 of the UCC in the context of a preference action); *Uly-Pak*, 101 B.R. at 553-54 (acknowledging that the UCC did not apply to unearned insurance premiums); *In re Sage Enter., Inc.* No. 04 B 05548, slip op. at 5-11 (Bankr. N.D. Ill. Nov. 17, 2004) (recognizing that a majority of courts have held that security interests in unearned premiums are excluded from Article 9); *see*

---

[11] PAC cites to several orders from judges in this District, including the undersigned, that have recognized a premium finance company's security interest in the unearned insurance premiums and have granted either adequate protection or relief from the automatic stay. *See, e.g., In re Nahigian Bros. Galleries, Inc.*, No. 03 B 36182 (Nov. 19, 2003) (Black, J.); *In re Nino's Enters., Inc.*, No. 02 B 37261 (Jan. 15, 2003) (Doyle, J.); *In re Telesphere Commc'ns, Inc.*, No. 91 B 17581 (Oct. 22, 1991) (Wedoff, J.); *In re MarchFirst, Inc.*, No. 01 B 24742 (July 19, 2001) (Schwartz, J.); *In re ATRN, Inc.*, 90 B 16708 (Oct. 16, 1990) (Squires, J.); *In re Rand Hall Corp.*, No. 90 B 12606 (Aug. 9, 1990) (Barliant, J.); *In re Maglaris Enters., Inc.*, No. 88 B 19376 (May 5, 1989) (Katz, J.).

·11·

also *Am. Bank & Trust Co. v. Jardine Ins. Servs. Tex., Inc. (In re Barton Indus., Inc.)*, 104 F.3d

1241, 1246 (10th Cir. 1997) (applying Oklahoma law and finding that Article 9 did not apply

"because the security interests were 'in or under [a] policy of insurance'"); *Comerica Bank-Ann*

*Arbor, N.A. v. Sutherland (In re Duke Roofing Co.)*, 47 B.R. 990, 992 (E.D. Mich. 1985)

(applying Michigan law and stating that "Article 9 of the [UCC] does not apply to a secured

transaction in which the collateral consists of unearned insurance premiums"); *Premium Fin.*

*Specialists, Inc. v. Lindsey*, 11 B.R. 135, 138 (E.D. Ark. 1981) (applying Arkansas law and noting

that insurance premium financing transactions are exempt from the filing requirements of Article

9); *Teligent*, 337 B.R. at 44 (applying New York and Virginia law and noting that Article 9 does

not govern the perfection of a security interest in unearned premiums); *Megamarket of Lexington*,

207 B.R. at 535 (applying Kentucky law and stating that a UCC-1 financing statement is not

required in order to perfect the security interest of a premium financier because such a transaction

is excluded from Article 9); *Premium Fin. Specialists, Inc. v. Remcor, Inc. (In re Remcor, Inc.)*,

186 B.R. 629, 635 (Bankr. W.D. Pa. 1995) (applying Pennsylvania law and acknowledging that

"perfection of a security interest in unearned insurance premiums is determined without reference

to Article 9"); *In re Smith*, 167 B.R. 895, 898 (Bankr. E.D. Mo. 1994) (applying Missouri law and

stating that "[i]nsurance is excluded from the scope of Article 9"); *A-1 Credit Corp. v. Big Squaw*

*Mountain Corp. (In re Big Squaw Mountain Corp.)*, 122 B.R. 831, 835-36 (Bankr. D. Me. 1990)

(applying Maine law and recognizing that all of the cases that have addressed the issue of whether

a premium financing entity's right to unearned premiums is governed by the UCC, have answered

the question in the negative); *In re Cooper*, 104 B.R. 774, 775 (Bankr. S.D. W. Va. 1989)

(applying West Virginia law and finding that the UCC does not apply to security interests in

-12-

unearned insurance premiums); *Tifco, Inc. v. United States Repeating Arms Co. (In re United States Repeating Arms Co.)*, 67 B.R. 990, 996 (Bankr. D. Conn. 1986) (applying Maryland law and stating that courts that have considered the issue "have held unanimously that Article 9 . . . is not applicable to a security interest in unearned insurance premiums"); *Borg-Warner Credit Corp. v. RBS Indus., Inc. (In re RBS Indus., Inc.)*, 67 B.R. 946, 949-50 (Bankr. D. Conn. 1986) (applying New York law and noting that a UCC-1 financing statement need not be filed in order to create a security interest in unearned premiums); *In re Air Vermont, Inc.*, 40 B.R. 335, 337 (Bankr. D. Vt. 1984) (applying Massachusetts and Vermont law and finding that under Massachusetts law, the filing of a financing statement is not necessary to perfect a security interest in unearned premiums; if the finance agreement were a Vermont contract, it would be excluded from Article 9 as a transfer of an interest or claim in or under an insurance policy); *Thico Plan, Inc. v. Maplewood Poultry Co. (In re Maplewood Poultry Co.)*, 2 B.R. 550, 554-555 (Bankr. D. Me. 1980) (applying Maine law and noting that transfers of interests inseparable from insurance policies, such as unearned premiums, are excluded from Article 9); *Feinstein v. Afco Credit Corp. (In re Krimbel Trucking Co.)*, 3 B.R. 4, 6 (Bankr. W.D. Wash. 1979) (applying Washington law and finding that Article 9 does not apply to unearned insurance premiums); *Nicola v. Northfield Ins. Co. (In re Redfeather Fast Freight, Inc.)*, 1 B.R. 446, 450 (Bankr. D. Neb. 1979) (applying Nebraska and New York law and stating that the premium finance agreement was excluded from Article 9).

The Trustee has not cited to any reported decisions from any jurisdiction that hold that unearned insurance premiums are covered by Article 9 of the UCC. Indeed, the express language of the UCC itself states explicitly that "a transfer of an interest in or an assignment of a claim

·13·

under a policy of insurance" is outside of the scope of the UCC.  810 ILL. COMP. STAT. 5/9-109(d)(8). Moreover, the "uniformity [among the jurisdictions] must be accorded great weight when ascertaining whether or not a transaction should be excluded from the scope of Article 9." *Remcor*, 186 B.R. at 635. The Court will not "contravene the express policy of making the law pertaining to the UCC uniform among the jurisdictions that have adopted it." *Id.* In sum, the Court agrees with the majority view and finds that Article 9 does not apply here to the transaction between PAC and Jernberg by which Jernberg granted to PAC a security interest in the unearned premiums under the Insurance Policies.

**B.      Whether PAC Has a Security Interest in the Unearned Insurance Premiums**

Paragraph 1 of the Finance Agreement expressly grants to PAC a security interest in any unearned premiums under the Insurance Policies. (PAC Ex. A-1 ¶ 1.) In addition, paragraph 2 of the Finance Agreement grants to PAC an irrevocable power of attorney to cancel the Insurance Policies should Jernberg default in making payments under the Finance Agreement.  (*Id.* ¶ 2.) According to PAC, this language grants it a valid security interest in the unearned premiums. The Trustee, on the other hand, argues that the Finance Agreement is nothing more than a contract that is insufficient to create a security agreement. The Trustee contends that under Illinois law, in order to create a security interest in property, there must be a debt due and a separate, written grant of a security interest to secure payment of that debt.[12] The Trustee acknowledges that there was a debt due, but argues that PAC does not have a separate, written security agreement.

---

[12]  The Trustee cites to the following cases in support of this proposition: *Allis-Chalmers Corp. v. Staggs*, 453 N.E.2d 145 (Ill. App. Ct. 1983); *Resolution Trust Corp. v. Hardisty*, 646 N.E.2d 628 (Ill. App. Ct. 1995); and *S-K Partners, Ltd. v. Comerica Bank*, No. 97 C 4357, 1998 WL 292434 (N.D. Ill. May 18, 1998).

·14·

The Court finds that the Trustee's argument misses the mark. As the Court noted *supra*

in Section IV.A, the UCC is inapplicable to premium finance agreements. Because the

transaction at bar is not governed by the UCC, a separate, express grant of security interest is not

required. *See Uly-Pak*, 101 B.R. at 554. None of the cases cited by the Trustee involved a

premium finance agreement and a security interest in unearned insurance premiums. Hence, the

cases cited regarding the necessity of a separate, written security agreement do not apply here.

The *Uly-Pak* court set forth the requirements for a security interest in unearned premiums

and stated in pertinent part as follows:

> A security interest in unearned premiums is created when the
> premium finance company makes full payment of the premiums
> due and, in return, through an assignment effective under state law,
> receives the right to any unearned premiums following default of
> the insured. Since the transaction is not governed by the UCC, an
> express grant of security interest is not required; however, there
> must be an effective assignment of the insured's right to unearned
> premiums. In order that the financing party may have recourse to
> the collateral securing its loan, moreover, it is necessary to obtain
> from the insured the right to cancel the policies in the event of
> nonpayment.

101 B.R. at 554 (citations omitted).

According to the Trustee, PAC was required to file a UCC-1 financing statement in order

to perfect its security interest in the unearned premiums. It is undisputed that PAC did not file

such a financing statement. The Trustee argues that because other jurisdictions have statutes that

specifically provide that the filing of the premium finance agreement is not necessary to perfect

the validity of the agreement, and Illinois does not have such a statute, it is not clear that the filing

of a UCC-1 financing statement is not necessary to perfect the Finance Agreement as against

creditors or subsequent purchasers. Additionally, the Trustee contends that PAC has a "secret

-15-

lien" in the unearned premiums and, for this reason alone, the Court should find that PAC does not have an interest in the unearned premiums superior to that of the Trustee and the other creditors of Jernberg.

The Court rejects the Trustee's arguments. First, the UCC explicitly exempts transactions concerning interests or claims under insurance policies from Article 9. As noted *supra* in Section IV.A, every jurisdiction, including Illinois, that has considered this issue has found that Article 9 is not applicable to unearned insurance premiums. Accordingly, the Court rejects the Trustee's corollary point that PAC's claim resembles a right to payment of a monetary obligation for property that has been assigned under 810 ILL. COMP. STAT. 5/9-102(a)(2), and is thereby subject to the UCC requirements. Second, the fact that the Illinois Insurance Code does not specifically exempt such transactions does not *ipso facto* mean that the filing of a UCC-1 financing statement is necessary to perfect a security interest in unearned premiums. That other states have chosen to enact statutes which provide that the filing of a UCC-1 financing statement is not necessary, and Illinois has not enacted such a statute, does not mean that a filed financing statement is required in Illinois.[13]

Moreover, the Court disagrees with the Trustee's characterization of PAC's lien as "secret." Because the UCC does not require that a lien in unearned insurance premiums be publicly recorded, the notion of a "secret lien" is inapplicable to the matter at bar. *See, e.g., Maplewood Poultry*, 2 B.R. at 555 (noting that a fundamental policy of Article 9 is to discourage

---

[13] Several states have enacted statutes which provide that the filing of the premium finance agreement is not necessary to perfect the validity of the agreement. *See, e.g.,* D.C. CODE § 31-1112 (2006); MD. CODE ANN., [INSURANCE] § 23-310 (West 2006); MASS. GEN. LAWS ANN. CH. 255C, § 12 (West 2006); N.Y. [BANKING] LAW § 566 (McKinney 2006); WASH. REV. CODE ANN. § 48.56.130 (West 2006).

-16-

secret liens, and holding that exempting premium finance transactions from Article 9 "poses no threat to this important public policy, any more than the enforcement of a security interest in a motor vehicle duly noted on a certificate of title"). Thus, the Court finds that the filing or recording of a UCC-1 financing statement is not required to perfect PAC's security interest in Jernberg's Insurance Policies and the unearned premiums.

The Court finds that PAC has demonstrated that it has a valid security interest in the unearned insurance premiums. The language contained in paragraphs 1 and 2 of the Finance Agreement establishes that PAC has a security interest in the unearned premiums. Under the requirements set forth in the *Uly-Pak* case, PAC has shown that there was an effective assignment of Jernberg's right to the unearned premiums to PAC, along with a power of attorney that gave PAC the right to cancel the Insurance Policies in the event of non-payment. *See* 101 B.R. at 554.

### C.    Whether PAC Abided by Illinois Law Governing the Formation of Premium Finance Agreements

Next, the Trustee argues that PAC failed to comply with the Illinois law that governs the formation of valid premium finance agreements.[14] Specifically, the Trustee contends that PAC

---

[14] In his closing argument, which was filed after the evidentiary hearing, the Trustee raises two new arguments: (1) that the Finance Agreement does not create a security interest in the unearned premiums because a contract cannot create a security interest apart from a separate security agreement; and (2) PAC failed to give Jernberg timely notice of the terms and conditions of the Finance Agreement as required by 215 ILL. COMP. STAT. 5/513a9(b). PAC objects to these arguments on the grounds that the Trustee failed to comply with the Court's Prehearing Order and PAC will be prejudiced if the Court considers these arguments because it did not present evidence to address these points as they were raised after the hearing was concluded. It is improper to present new arguments in a closing brief. *Cf. United States v. Magana*, 118 F.3d 1173, 1198 n.15 (7th Cir. 1997) (stating that new arguments raised in a reply brief are inappropriate). Moreover, arguments not raised in a timely fashion are waived. *In re Commercial Loan Corp.*, 316 B.R. 690, 699 (Bankr. N.D. Ill. 2004). The failure to raise a point prior to trial results in waiver of that point. *Magana*, 118 F.3d at 1189. Thus, the Court will not further address these untimely contentions.

·17·

failed to set forth the complete and correct insurance policy numbers and letters anywhere in the

Finance Agreement, including the first page of the Finance Agreement, as required by 215 ILL.

COMP. STAT. 5/513a9(a)(7). According to the Trustee, the Finance Agreement is invalid under

Illinois law because PAC lacks an effective assignment of Jernberg's right to the unearned

premiums and any purported priority in the unearned premiums granted by law is vitiated. The

Trustee contends that PAC failed to comply with all of the regulations necessary under the statute.

Pursuant to Illinois law, PAC is subject to Article XXXIIA of the Illinois Insurance Code

relating to Premium Finance Regulation. *See* 215 ILL. COMP. STAT. 5/513a1 *et seq.* (the

"Regulation"). Specifically, the Regulation governs "all persons engaged in the business of

financing insurance premiums, entering into premium finance agreements, or otherwise acquiring

premium finance agreements. . . ." 215 ILL. COMP. STAT. 5/513a1(a). It is undisputed that PAC

is in the business of financing insurance premiums and entering into premium finance agreements.

(PAC Ex. B.)

The Regulation sets forth the requirements that an agreement must meet in order to be a

premium finance agreement.[15] In particular, § 5/513a9(a)(7) requires that the policy numbers or

---

[15]    Section 5/513a9(a) provides as follows:

> (a) A premium finance agreement *must be* dated and signed
> by or on behalf of the named insured, and the printed portion
> shall be in at least 8-point type. The following items *must be
> set forth on the first page of the accepted finance agreement*:
>
> (1)  the total amount of the premiums;
> (2)  the amount of the down payment;
> (3)  the principal balance (the difference
> between items (1) and (2));
> (4)  the amount of the finance charges
> expressed in dollars and as an annual

-18-

binder numbers must be set forth on the first page of the accepted finance agreement. 215 ILL. COMP. STAT. 5/513a9(a)(7). The first page of the Finance Agreement specifically refers to "Scheduled Policies of Insurance shown on page 3." (PAC Ex. A-1 p. 1.) Page three of the Finance Agreement lists the Insurance Policies as well as the numbers and letters of those policies. (*Id.* p. 3.) The Trustee argues that strict compliance with the statute is required because of the use of the word "must."

The Court finds that the Finance Agreement substantially conforms to the requirements of § 5/513a9(a)(7) because it apprised Jernberg of the Insurance Policies in which a security interest was being granted by referencing the schedule of Insurance Policies on the first page and listing those policies on the third page. The Trustee has not cited to any case law that prohibits PAC from referring to or incorporating a schedule of the Insurance Policies, as long as the schedule is referred to on the first page of the Finance Agreement. Rather, the Trustee argues that the use of the word "must" in the statute mandates that PAC list the policy numbers on the first page of the Finance Agreement, not reference a schedule of those policies and list the numbers on a subsequent page.

The word "must" "is generally regarded as mandatory." *Andrews v. Foxworthy*, 373 N.E.2d 1332, 1335 (Ill. 1978). *Accord In re Parentage of M.J.*, 787 N.E.2d 144, 149 (Ill. 2003)

---

> percentage rate;
> (5)  the balance payable by the insured (sum of items (3) and (4));
> (6)  the number of installments, the due dates thereof, and the amount of each installment expressed in dollars; and
> (7)  *the policy numbers or binder numbers.*

215 ILL. COMP. STAT. 5/513a9(a) (emphasis supplied).

-19-

(*citing Andrews*).  Nevertheless, there is no language in the Regulation that mandates strict compliance with the statute. *See, e.g., Dunbar v. Nat. Union Fire Ins. Co.*, 561 N.E.2d 450, 453 (Ill. App. Ct. 1990) (finding a cancellation notice effective despite the fact that it was not labeled a "request" for cancellation as required by statute).  The Court will not so strictly construe the Illinois Insurance Code and find that the reference to a schedule of the Insurance Policies on the first page is insufficient as a matter of law to comply with § 5/513a9(a)(7).  The Court finds that PAC did effectively comply with the statutory language by referencing a schedule of the Insurance Policies on the first page and actually listing what it learned about the policy numbers on the subsequent third page.

Even if the Court ruled that PAC failed to strictly comply with § 5/513a9(a)(7), nothing contained in the Insurance Code invalidates PAC's security interest in the unearned premiums. Rather, the only penalty provided in the Insurance Code for non-compliance is contained in 215 ILL. COMP. STAT. 5/513a7(a) and (f).[16]  These provisions allow the Illinois Director of Insurance to revoke the license of a premium finance company that willfully violates the provisions of the

---

[16]  Section 5/513a7(a) and (f) provide in relevant part as follows:

> (a) Any license issued under this Article may be suspended, revoked, or denied if the Director finds that the licensee or applicant:
>> (1) has wilfully violated any provisions of this Code or the rules and regulations thereunder[.]
>
> (f) In addition to or instead of a denial, suspension, or revocation of a license under this Section, the licensee may be subjected to a civil penalty of up to $2,000 for each cause for denial, suspension, or revocation. . . .

215 ILL. COMP. STAT. 5/513a7(a)(1) & (f).

-20-

Insurance Code. Invalidation of a security interest does not result from a violation of this statute. Moreover, violation of the statute does not render a premium finance agreement ineffective.

Next, the Trustee argues that PAC has not adequately described the Insurance Policies pursuant to the statute. The Trustee points to the erroneously described Insurance Policies and states that the numbers and letters in PAC's Finance Agreement do not match those on the Jernberg Insurance Policies. In particular, the policy with American Guarantee & Liability is listed as ERP53440000 in the Finance Agreement and should be listed as ERP 5344400-00; the policy with Illinois National Insurance Company is referenced in the Finance Agreement as 2685601 and should be referred to as BE 2685601; and the policy with Great Northern Insurance is listed in the Finance Agreement as 73514150 and should be identified as 7351-41-50 CHI.

The Court is not inclined to penalize PAC for these minor scrivener's errors. That the number "4" and two hyphens were missing from the description of one policy, and the letters "CHI" and "BE" were missing from the description of the other two policies, do not warrant the harsh result of rendering the Finance Agreement ineffective. The Insurance Policies were reasonably identified in the Finance Agreement, including the insured's name, the names of the insurance companies, the policy type, the effective date, and the premium amounts. Those parties were not confused by these errors in the description of the Insurance Policies, and the Trustee failed to adduce any evidence of confusion resulting from such minor errors. Nor did the parties lack knowledge as to which policies were involved in the transaction. Indeed, Jernberg signed the Finance Agreement and paid PAC under that document. Jernberg ceased remitting to PAC only after the bankruptcy filing. Similarly, there was no evidence adduced at trial that the Insurers were confused; rather, they honored cancellation of the Insurance Policies as requested by PAC.

-21-

The Trustee cites to the *Uly-Pak* case in support of his position that the errors in the numbers and letters of the Insurance Policies render the Finance Agreement invalid. In *Uly-Pak*, the insurance policy that was identified in the agreement had expired. 101 B.R. at 555. The lender attempted to assert an interest in a successor policy to the one identified in the agreement. *Id.* The court found that the lender did not have a security interest in the expired policy. *Id.* The facts in *Uly-Pak* are not similar to those in the matter at bar. The issue there was not a minor discrepancy in the description of the insurance policy, but, rather, reference to the wrong policy–a policy that had expired and for which the entire premium had already been earned. That is not the case in the situation at bar. Thus, the distinguishable facts in the *Uly-Pak* case lend no support to the Trustee's argument.

Next, the Trustee argues that even if the Court finds that PAC has a valid security interest in the unearned insurance premiums, that lien was lost upon the filing of the bankruptcy petition which revoked the power of attorney. The Court also rejects this argument as disingenuous. The language in paragraph 1 of the Finance Agreement, which grants PAC a security interest in the unearned premiums, coupled with the irrevocable power of attorney to cancel the Insurance Polices as provided in paragraph 2 of that document, is not vitiated by the bankruptcy filing. An irrevocable power of attorney is not rendered unenforceable in bankruptcy if combined with an interest in the unearned premiums superior to that of the bankruptcy trustee. *United States Repeating Arms*, 67 B.R. at 998.

The Regulation recognizes the interest that a premium finance company has in unearned premiums. Section 5/513a11 provides that when a premium finance agreement contains a power of attorney, the premium finance company has the power to cancel an insurance contract after

-22-

default in payment to it by the insured and upon giving the required notice. 215 ILL. COMP. STAT.

5/513a11(a)-(c). The Regulation acknowledges that the premium financier is entitled to the

unearned premiums. 215 ILL. COMP. STAT. 5/513a11(e) ("In the event that the collection of return

premiums for the account of the named insured results in a surplus over the amount due from the

named insured, the premium finance company shall refund the excess to the named insured...").

Moreover, pursuant to 215 ILL. COMP. STAT. 5/143.14(b), whenever a financed insurance policy

is cancelled, the insurer is required to return unearned premiums directly to the premium finance

company.[17] In sum, the power of attorney along with the grant to PAC of a security interest in

the unearned premiums of the Insurance Policies, renders PAC's security interest in those

premiums and its right to cancel the Insurance Policies enforceable notwithstanding Jernberg's

bankruptcy filing.

Finally, the Trustee argues that because the Insurance Policies prohibit assignment, absent

prior written consent of the Insurers, PAC's failure to obtain such written consent renders its

attempted assignment invalid. Once again, the Trustee's argument in this respect is misguided.

The Trustee cites to clauses in the Insurance Policies that prohibit assignment, absent written

consent of the Insurers. (Trustee Ex. Nos. 1, p. 3; 2, p. 22; & 3, p. 16.) That language, however,

---

[17] Section 5/143.14(b) provides in pertinent part as follows:

> (b) Whenever a financed insurance contract is cancelled, the
> insurer shall return whatever gross unearned premiums are
> due under the insurance contract or contracts not to exceed
> the unpaid balance due the premium finance company directly
> to the premium finance company effecting the cancellation for
> the account of the named insured.

215 ILL. COMP. STAT. 5/143.14(b).

-23-

does not apply to the return of unearned premiums in favor of a finance company that advanced

the premiums and reserved a security interest in unearned premiums if the policies were cancelled

early. Jernberg's grant to PAC of the right to obtain the return of unearned premiums after

cancellation is not an assignment of Jernberg's right to recover for an insured risk under the

Insurance Policies. The Illinois Supreme Court stated in *Lain v. Metro. Life Ins. Co.*, 58 N.E.2d

587 (Ill. 1944) as follows:

> The general rule, supported by a great wealth of authority, is that
> general stipulations in policies, prohibiting their assignment
> thereof except with the insurer's consent, or upon giving some
> notice, or like conditions, have universally been held to apply only
> to assignments before loss, and, accordingly, not to prevent an
> assignment after loss, of the claim or interest of the insured in the
> insurance money then due in respect to the loss.

*Id.* at 588. Thus, the anti-assignment clauses contained in the Insurance Policies and referred to

by the Trustee do not apply to the above cited statutory right of PAC to the return of the unearned

premiums after cancellation. Accordingly, PAC has a perfected, pre-petition, unavoided lien on

the unearned premiums. As such, PAC has an interest in those unearned premiums superior to

the Trustee's hypothetical lienholder status under 11 U.S.C. § 544(a).

In sum, the Court finds that cause exists pursuant to § 362(d)(1) to terminate the automatic

stay because PAC has not received any adequate protection of its interest in the unearned

premiums, which have been refunded by the Insurers and are being held by the Trustee pending

the Court's determination of this matter. Under § 362(d)(2)(A), the stay is terminated because

Jernberg does not have an equity interest in the unearned insurance premiums to the extent of

PAC's debt. Moreover, pursuant to § 362(d)(2)(B), the automatic stay should be terminated

because the unearned insurance premiums are not necessary to Jernberg's effective reorganization

·24·

as this case is a Chapter 7 proceeding. PAC shall receive a refund of the unearned insurance premiums currently held in escrow by the Trustee. In addition to the unpaid principal owed PAC by Jernberg pursuant to the Finance Agreement, PAC is entitled to interest, attorney's fees, and costs, the total of which exceeds the refunded unearned premiums. (PAC Ex. A-1 ¶¶ 7 & 11.)

## V. CONCLUSION

For the foregoing reasons, the Court concludes that PAC's interest in the unearned premiums is not subject to the requirements of the UCC. Further, the Trustee's claim under § 544(a) is not superior to PAC's interest in the unearned premiums. The Court grants PAC's motion and finds that cause exists under § 362(d) to terminate the automatic stay in order to allow PAC to receive the refund of the unearned insurance premiums in the sum of $114,112.72, currently held in escrow by the Trustee, to partially satisfy its principal unpaid claim against Jernberg, plus unpaid interest, attorney's fees, and costs.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _____ 7/12/6 _____

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### In re JII Liquidating, Inc. f/k/a Jernberg Industries, Inc., et al
### Bankruptcy No.  05 B 25909

Robert J. Trizna, Esq.
Michael D. Lee, Esq.
Schuyler, Roche & Zwirner, P.C.
130 E. Randolph Street, Suite 3800
Chicago, IL 60601

Richard J. Mason, Esq.
McGuire Woods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601-1815

Michael M. Schmahl, Esq.
Patrick K. Smoots, Esq.
McGuire Woods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601-1815

John Collen, Esq.
Rosanne Ciambrone, Esq.
Duane Morris LLP
227 W. Monroe Street, Suite 3400
Chicago, IL 60606

Paula Jacobi, Esq.
Sugar, Friedberg & Felsenthal LLP
30 N. LaSalle Street, Suite 3000
Chicago, IL 60602